IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JIMMIE WILLIAMS, §
§
          Plaintiff, §
§
VS. §          Civ. A. H-13-2510
§
J.B. HUNT TRANSPORT, INC., §
§
          Defendant. §

## OPINION AND ORDER GRANTING SUMMARY JUDGMENT

Pending before the Court in the above referenced case, seeking compensatory and punitive damages and equitable relief for violations of the Americans with Disabilities Act ("ADA")of 1990, 42 U.S.C. § 12102, *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, is a motion to dismiss, and, in the alternative, motion for summary judgment under Federal Rules of Civil Procedure 12(b)(1), 12(h)(3), or 56(c) (instrument #14), filed by Defendant J.B. Hunt Transport, Inc.

### Standards of Review

**Rule 12(b)(1)**

Rule 12(b)(1) allows a party to move for dismissal of an action for lack of subject matter jurisdiction.  The party asserting that subject matter exists, here the plaintiff, must bear the burden of proof by a preponderance of the evidence for a 12(b)(1) motion.  *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  In reviewing a motion under 12(b)(1) the

court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is characterized as either a "facial" attack, i.e., the allegations in the complaint are insufficient to invoke federal jurisdiction, or as a "factual" attack, i.e., the facts in the complaint supporting subject matter jurisdiction are questioned. *In re Blue Water Endeavors, LLC*, Bankr. No. 08-10466, Adv. No. 10-1015, 2011 WL 52525, *3 (E.D. Tex. Jan. 6, 2011), *citing Rodriguez v. Texas Comm'n of Arts*, 992 F. Supp. 876, 878-79 (N.D. Tex. 1998), *aff'd*, 199 F.3d 279 (5th Cir. 2000). A facial attack happens when a defendant files a Rule 12(b)(1) motion without accompanying evidence. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). In a facial attack, allegations in the complaint are taken as true. *Blue Water*, 2011 WL 52525 at *3*, citing Saraw Partnership v. United States*, 67 F.3d 567, 569 (5th Cir. 1995).

If it is a factual attack, the Court may consider any evidence (affidavits, testimony, documents, etc.) submitted by the parties that is relevant to the issue of jurisdiction. *Id., citing Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989). A defendant making a factual attack on a complaint may provide supporting affidavits, testimony or other admissible

-2-

evidence.  *Patterson v. Weinberger*, 644 F.3d 521, 523 (5th Cir. 1981).  The plaintiff, to satisfy its burden of proof, may also submit evidence to show by a preponderance of the evidence that subject matter jurisdiction exists.  *Id*.  The court's consideration of such matters outside the pleadings does not convert the motion to one for summary judgment under Rule 56(c).  *Robinson v. Paulson*, H-06-4083, 2008 WL 4692392 at *10 (S.D. Tex. Oct. 28, 2008), *citing Garcia*, 104 F.3d at 1261.  "Unlike in a facial attack where jurisdiction is determined upon the basis of allegations of the complaint, accepted as true[,] when a factual attack is made upon federal jurisdiction, no presumption of truthfulness attaches to the plaintiffs' jurisdictional allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  In a factual attack, the plaintiffs have the burden of proving that federal jurisdiction does in fact exist."  *Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir. 1981).  In resolving a factual attack on subject matter jurisdiction under Rule 12(b)(1), the district court, which does not address the merits of the suit,[1] has

---

[1] As the court explained in *Taylor v. Dam*, 244 F. Supp. 2d 747, 753 (S.D. Tex. 2003),

> It is well settled that "a district court has broader power to decide its own right to hear the case than it has when the merits of the case are reached." [*Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.). *cert. denied*, 454 U.S. 897 (1981).] "Jurisdictional issues are for the court--not the jury--to decide, whether they hinge on legal or factual determinations. *Id.* To determine whether jurisdiction exists, the court will generally

significant authority "'to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Robinson v. Paulson*, No. H-06-4083, 2008 WL 4692392, *10 (S.D. Tex. Oct. 22, 2008), *quoting Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997), and *citing Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986).

Rule 12(h)(3) states, "If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action. Unlike Rule 12(b)(1), which must be raised by motion of a party, under Rule 12(h)(3) the court may raise lack of subject matter jurisdiction by itself at any time.

**Rule 12(b)(6)**

When a district court reviews a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. *Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011), *citing Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). The plaintiff's legal conclusions are not entitled to the same assumption. *Ashcroft v. Iqbal*, 556 U.S. 662,

---

resolve any factual disputes from the pleadings and the affidavits submitted by the parties. *See Espinoza v. Missouri Pac. R.R. Co.*, 754 F.2d 1247, 1248 n.1 (5th Cir. 1985). The court may also conduct an evidentiary hearing and "may hear conflicting written and oral evidence and decide for itself the factual issues which determine jurisdiction." *Williamson*, 645 F.2d at 413; *see Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511-12 (5th Cir.), *cert. denied*, 449 U.S. 953 . . . (1980).

-4-

678 (2009)("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."), *citing Bell Atlantic Corp. v. Twombly*, 556 U.S. 662, 678 (2007); *Hinojosa v. U.S. Bureau of Prisons*, 506 Fed. Appx. 280, 283 (5th Cir. Jan. 7, 2012).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)(citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965, *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). "*Twombly* jettisoned the minimum notice pleading requirement of *Conley v. Gibson*, 355 U.S. 41 . . . (1957)["a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"], and instead required that a complaint allege enough facts to state a claim that is plausible on its face." *St. Germain v. Howard*, 556 F.3d 261, 263 n.2 (5th Cir. 2009), *citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191,

205 (5th Cir. 2007)("To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"), *citing Twombly*, 127 S. Ct. at 1974).  "'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Montoya v. FedEx Ground Package System, Inc*., 614 F.3d 145, 148 (5th Cir. 2010), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plausibility standard is not akin to a "probability requirement," but asks for more than a "possibility that a defendant has acted unlawfully." *Twombly*, 550 U.S. at 556.  Dismissal is appropriate when the plaintiff fails to allege "'enough facts to state a claim to relief that is plausible on its face'" and therefore fails to "'raise a right to relief above the speculative level.'" *Montoya*, 614 F.3d at 148, *quoting Twombly*, 550 U.S. at 555, 570.

In *Ashcroft v. Iqbal*, 556 U.S. at 679, the Supreme Court stated that "only a complaint that states a plausible claim for relief survives a motion to dismiss," a determination involving "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" under Rule 12(b).  *Iqbal*, 129 S. Ct. at 1949.  The plaintiff must plead specific facts, not merely conclusory allegations, to avoid dismissal.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "Dismissal is proper if the complaint lacks an allegation regarding a

required element necessary to obtain relief . . . ." *Rios v. City of Del Rio, Texas*, 444 F.3d 417, 421 (5th Cir. 2006), *cert. denied*, 549 U.S. 825 (2006).

"Rule 12(b) is not a procedure for resolving contests about the facts or the merits of a case." *Gallentine v. Housing Authority of City of Port Arthur, Tex.*, ___ F. Supp. 2d ___, Civ. A. No. 1:12-CV-417, 2013 WL 244651, *3 (E.D. Tex. Jan. 22, 2012), *citing* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure:  Civil 2d* § 1356, at 294 (1990).

As noted, on a Rule 12(b)(6) review, although generally the court may not look beyond the pleadings, the Court may examine the complaint, documents attached to the complaint, and documents attached to the motion to dismiss to which the complaint refers and which are central to the plaintiff's claim(s), as well as matters of public record. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010), *citing Collins*, 224 F.3d at 498-99; *Cinel v. Connick*, 15 F.3d 1338, 1341, 1343 n.6 (5th Cir. 1994). *See also United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003)("the court may consider . . . matters of which judicial notice may be taken").  Taking judicial notice of public records directly relevant to the issue in dispute is proper on a Rule 12(b)(6) review and does not transform the motion into one for summary judgment. *Funk v. Stryker Corp.*, 631 F.3d 777, 780 (5th Cir. 2011).  "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within

the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

**Rule 56**

Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate when, viewing the evidence in the light most favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Initially the movant bears the burden of identifying those portions of the pleadings and discovery in the record that it finds demonstrate the absence of a genuine issue of material fact on which the nonmovant bears the burden of proof at trial; a "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885 (1990); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998).

If the movant meets its burden and points out an absence of evidence to prove an essential element of the nonmovant's case on which the nonmovant bears the burden of proof at trial, the

nonmovant must then present competent summary judgment evidence to support the essential elements of its claim and to demonstrate that there is a genuine issue of material fact for trial. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d 698, 712 (5th Cir. 1994). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmovant may not rely merely on allegations, denials in a pleading or unsubstantiated assertions that a fact issue exists, but must set forth specific facts showing the existence of a genuine issue of material fact concerning every element of its cause(s) of action. *Morris v. Covan World Wide Moving, Inc,*, 144 F.3d 377, 380 (5th Cir. 1998).

Conclusory allegations unsupported by evidence will not preclude summary judgment. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 713; *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). "'[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . .'" *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990), *quoting Anderson v. Liberty Lobby, Inc.*. 477 U.S. 242, 247-48 (1986). "Nor is the 'mere scintilla of evidence' sufficient; 'there must be evidence on which the jury could reasonably find for the plaintiff.'" *Id., quoting Liberty Lobby*, 477 U.S. at 252. The Fifth Circuit requires the nonmovant to submit "'significant probative evidence.'" *Id., quoting In re Municipal Bond Reporting*

*Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1978), and *citing Fischbach & Moore, Inc. v. Cajun Electric Power Co-Op.*, 799 F.2d 194, 197 (5th Cir. 1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999), *citing Celotex*, 477 U.S.  at 322, and *Liberty Lobby*, 477 U.S. at 249-50.

Allegations in a plaintiff's complaint are not evidence. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996)("[P]leadings are not summary judgment evidence."); *Johnston v. City of Houston, Tex.,* 14 F.3d 1056, 1060 (5th Cir. 1995)(for the party opposing the motion for summary judgment, "only evidence--not argument, not facts in the complaint--will satisfy' the burden."), *citing Solo Serve Corp. v. Westown Assoc.*, 929 F.2d 160, 164 (5th Cir. 1991).  The nonmovant must "go beyond the pleadings and by [his] own affidavits, or by depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue of material fact for trial." *Giles v. General Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001), *citing Celotex*, 477 U.S. at 324.

The court must consider all evidence and draw all inferences from the factual record in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 712-13.

**Allegations of Plaintiff's Original Complaint (#1)**

-10-

Plaintiff Jimmie Williams ("Williams") states that he began his employment as a First Seat Truck Driver for Defendant in June 1999.  In May 2010 he took a temporary leave from work and obtained medical treatment for a condition that caused him to cough for an extended period of time and to faint.  On June 1, 2010, Williams' treating physician released him to return to work, but Defendant refused to reinstate him.  Williams then saw two cardiologists and underwent a heart catheterization and an Electrophysiology test, with subsequent test results being normal. Williams was certified to return to work by a Department of Transportation ("DOT") certified physician.  Nevertheless Defendant again refused to reinstate Williams to his previous position and erroneously regarded him as disabled.  Williams then provided Defendant with additional medical documentation showing that all his test results were normal and that his original diagnosis of "syncope, ventricular tachycardia" had been eliminated as a cause of his fainting.  Defendant still refused to reinstate him and terminated his employment.  Williams claims that his termination violated the ADA and the ADEA.

Williams states that he filed a Charge of Discrimination based on age and disability with the Equal Employment Opportunity Commission ("EEOC") on October 22, 2010, and the EEOC issued a Dismissal and Notice of Right to Sue on May 28, 2013.  Williams filed this suit on August 27, 2013.  Williams claims that he exhausted his administrative remedies, but Defendant disagrees with respect to the question of Williams' fitness to drive.

### Substantive Law

Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a), prohibits discrimination against an employee on the basis of physical or mental disability, and requires an employer to make reasonable accommodations necessary to allow an employee with a disability to perform the essential functions of her job unless the accommodation would impose an undue hardship on the employer.  Section 12112(a) of the ADA provides that no covered entity shall "discriminate" against a qualified individual with a disability because of the disability of such an individual in regard to, *inter alia*, "the hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment."  In addition, Section 12112(b)(5) states that the term, "discriminate," includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operations of the business of such covered entity."

When only indirect or circumstantial evidence is available, a plaintiff alleging a violation of the ADA must meet the burden-shifting framework of *McDonnell Douglas*.[2]  *Chevron*

---

[2] *McDonnell Douglass Corp. v. Green*, 411 U.S. 792 (1973)(first plaintiff creates a presumption of intentional discrimination by establishing a prima facie case; if he succeeds the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its challenged employment decision; if the employer meets this burden, the plaintiff must show (a) that the employer's reason is not true, but a pretext for

*Phillips*, 570 F.3d at 615, citing *McInnis v. Alamo Community College Dist.*, 207 F.3d 276, 279 (5th Cir. 2000).  Thus the plaintiff must first make a *prima facie* showing of discrimination under the ADA, i.e., that (1) she is disabled, has a record of having a disability, or is viewed as disabled; (2) she is qualified for her job; (3) she was subjected to an adverse employment action on account of her disability or the perception of her disability; and (4) she was replaced by, or treated less favorably than, non-disabled employees.  *Id.*  Then, if the plaintiff succeeds, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment action.  Once the employer has done so, the presumption of discrimination dissolves, and "the issue becomes discrimination *vel non.*"  *Id., citing Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000).  The plaintiff must show either that the employer's reason is not true, i.e., is pretextual, or that the defendant's reason while true, is only one reason for its conduct and another motivating factor is the plaintiff's protected characteristic, under the ADA his disability.  *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).  The trier of fact can consider any evidence presented in the *prima facie* case

---

discrimination, or (b) the defendant's reason, though true, is only one reason for its conduct and that another factor is the plaintiff's protected characteristic.  The last element, known as the mixed motive rule, was developed in Title VII cases, and the Fifth Circuit has recognized that "the ADA is part of the same broad remedial framework as . . . Title VII, and that all the anti-discrimination acts have been subjected to similar analysis" as to burden of proof.  *Miller v. Public Storage Mgmt., Inc.*, 121 F.3d 215, 218 (5th Cir. 1997).

and any other evidence the plaintiff presents to show that the
employer's articulated reason for the adverse employment action
was pretextual.  *Id.*

The ADEA makes it unlawful "to discharge any individual
. . . because of such individual's age."  29 U.S.C. § 623(a)(1).
The plaintiff bears the burden of persuasion to show that age was
the but-for cause of the employer's adverse action.  *Jackson v.
Cal-Western Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010).

In a suit for age discrimination based on circumstantial
evidence, the burden-shifting framework established in *McDonnell
Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), applies.
*Squyres v. Heico Companies, LLC*, 782 F.3d 224, 231 (5th Cir. 2015).
The plaintiff must first establish a *prima facie* case of
discrimination:  the plaintiff must show that (1) he was
discharged; (2) he was qualified for the position; (3) he was
within a protected class (at least forty years of age, 29 U.S.C.
§ 631(a)) at the time of the discharge; and (4) he was either
replaced by someone younger, or otherwise discharged because of
his age.  *Bodenheimer*, 5 F.3d at 957.  If the plaintiff succeeds
in establishing a *prima facie* case, it raises a presumption of
discrimination. *Sullivan v. Worley Catastrophe Services, LLC*, ___
Fed. Appx. ___, No. 14-30187, 2014 WL 6306710, at *2 (5th Cir. Nov.
17. 2014), *citing St. Mary's Honor Center v. Hicks*, 509 U.S. 502,
506 (1993).   The burden of production then shifts to the
defendant, who or which must then articulate a legitimate, non-
discriminatory reason for the termination.  *Id.* at *3*, citing

-14-

*Nichols*, 81 F.3d at 41.  The defendant may satisfy this burden by proffering evidence that "if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Id., citing St. Mary's Honor Ctr.*, 509 U.S. at 507.  The employer is not required to prove that it was actually motivated by these proffered reasons, nor must it demonstrate an absence of discriminatory motive.  If the employer succeeds, the presumption of discrimination falls away and the plaintiff must satisfy the burden of persuasion on the question of intentional discrimination by proving by a preponderance of the evidence that the employer's reasons are pretextual and that the discharge was motivated by intentional age discrimination.  Under the ADEA the plaintiff must show that age was the "but-for" cause of the challenged employment action  *Id.; Assariathu v. Lone Start Health Management Associates, LP*, 516 Fed. Appx. 315, 318 (5th Cir. Mar. 6, 2013).

Congress has delegated the power to prescribe driver qualifications for commercial motor vehicles and to adopt and enforce regulations, standards, and orders for commercial motor carrier safety exclusively to the Secretary of Transportation.  49 U.S.C. § 31102(b)(1).  Under that power the Department of Transportation ("DOT"), through the Federal Motor Carrier Safety Administration, has promulgated the Federal Motor Carrier Safety Regulations ("FMCSR"), setting out the "minimum qualifications for persons who drive commercial motor vehicles as, for, or on behalf of motor carriers." 49 C.F.R. § 391.1.  *Hensley v. United Parcel*

*Service, Inc.*, No. 1:13-CV-101-MR-DSC, 2014 WL 903166, at *3 (W.D. N.C. Mar. 7, 2014).  Pursuant to 49 C.F.R. § 391.11, "a motor carrier shall not . . . permit a person to drive a commercial motor vehicle unless that person is qualified to "drive" under the physical qualification standards established by DOT.  Under 49 C.F.R. § 391.41(a), a person "shall not operate a commercial motor vehicle unless he or she is medically certified as physically qualified to do so."  Under § 391.41(b)(4) and (b)(8).  To be "physically qualified," a person must both (1) meet the standards set forth in the regulations, i.e., not suffer from any noted impairments which may disqualify one from driving a commercial vehicle, and (2) pass a required medical examination and be certified by the examining doctor.  *Wilkie v. Golub Corp.*, No. 1:11-cv-1086 (GLS/RFT), 2013 WL 5354531, at *2 (N.D.N.Y. Sept. 24, 2013), *citing*, 49 C.F.R. §§ 391.41(a)(3)(i) and 391.43. Particularly relevant to this case, "[a] person is physically qualified to drive a commercial vehicle if that person--has no current clinical diagnosis of . . . cardiovascular disease of a variety known to be accompanied by syncope, dyspnea, collapse, or congestive cardiac failure" and "no established medical history or clinical diagnosis of . . . any . . . condition which is likely to cause loss of consciousness or any loss of ability to control a motor vehicle."  Under 391.43(f) "the medical examiner is required to certify that the driver does not have any physical, mental, or organic condition that might affect the driver's ability to operate a commercial motor vehicle safely."  Furthermore, if a

disagreement develops between the driver's personal physician and the motor carrier's physician concerning a driver's qualifications, DOT regulations provide appeal procedures: specifically the driver can seek a formal opinion from the Director of the Office of Bus and Truck Standards and Operations; he can subsequently appeal the decision of the Director within sixty days to the Assistant Administrator. 49 C.F.R. §§ 391.47(b)(2) and 286.13(a). These procedures must be followed in order to exhaust administrative remedies before suit can be filed. *See generally, Harris v. P.A.M. Transport, Inc.*, 339 F.3d 635, 638 (8th Cir. 2003).

When "relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts." *Reiter v. Cooper*, 507 U.S. 258, 269 (1993). Even when a plaintiff driver of a commercial vehicle files suit under the ADA, it is under DOT, and not the ADA, that Plaintiff must exhaust his administrative remedies regarding driver fitness where there is a conflict between the physician for the driver and the physician for the motor carrier concerning the driver's qualification because administrative agencies are better equipped, in this case DOT is better equipped, to determine specialized areas of fact. *See, e.g., Harris*, 339 F.3d at 638-39 (Since Congress gave DOT the sole discretion to set driver qualifications and DOT regulations clearly require a valid medical examiner's certificate of physical qualification, dismissal of ADA claim is particularly appropriate

-17-

because Harris cannot prove an essential element of a prima facie claim: namely, that he was qualified to perform the job function of a commercial truck driver; "DOT is charged with and is much better equipped to handle resolution of disputes over a driver's medical qualifications and can do so far more expertly and efficiently than a reviewing court."); *Wilkie*, 2013 WL 5354531 at *2; *Prado v. Cont'l Air Transp. Co.*, 982 F. Supp. 1304, 1308 (N.D. Ill. 1997)(concluding that the plaintiff "failed to obtain the required DOT certification, he was never qualified for the position of driver," and therefore could not "claim that he was unlawfully denied employment for a position which he was never qualified to perform"; "[t]he court will not abrogate clear congressional intent which vests driver fitness issues in the Secretary of Transportation."); *Thoms v. ABF Freight Sys., Inc.*, 31 F. Supp. 2d 1119, 1127 (E.D. Wis. 1998)(opining "The ADA does not override health and safety requirements established under other Federal laws); *Green v. Pace Suburban Bus,* No. 02 C 3031, 2004 WL 1574246, at *5 (N.D. Ill. July 12, 2004)("there is a developed body of precedent in which dismissals of public transportation drivers were upheld against ADA claims in situations where the driver did not qualify for a DOT medical certification."); *Campbell v. Federal Express Corp.*, 918 F. Supp. 912, 918 (D. Md. 1996)("Exhaustion of DOT procedures should be required" because driver fitness "falls squarely within the regulatory scheme (and substantive expertise) of DOT." If a standard is required by another Federal law, an employer must

comply with it and does not have to show that the standard is job related and consistent with business necessity"); *Cliburn v. CUSA KBC, LLC*, No. SA-07-CV-0620 NN, 2007 WL 4199605, at *3 (W.D. Tex. Nov. 23, 2007)(following *Harris*); *Marxhall v. Gordon Trucking, Inc.*, No. 3:12-cv-01550-BR, 2013 WL 5925815, at *3-4 (D. Ore. Oct.

30, 2013).[3]  In *Albertson's Inc. v. Kirkingburg*, 527 U.S. 555, 573-74 (1999), the United States Supreme Court opined,

> When Congress enacted the ADA, it recognized that federal safety rules would limit application of the ADA as a matter of law. The Senate Labor and Human Resources Committee Report of the ADA stated that "a person with a disability applying for or currently holding a job subject to [DOT standards for drivers] must be able to satisfy these physical qualification

_____

[3] As stated in *Talbot v. Maryland Transit Admin.*, No. WMN-12-1507, 2012 WL 5839945, at *2 (D. Md. Nov. 15, 2012)(addressing claim under the ADA when plaintiff, applying for a position as a part-time bus driver for MTA, could not meet DOT medical standards because of his polycystic kidney disease requiring kidney dialysis three times a week),

> Under the ADA, an employer may apply "qualification standards for a position as long as those standards are "job-related and consistent with business necessity." 42 U.S.C. § 12113(a).  More specific to the case at bar, courts have consistently held that an employment action based upon an employee's or prospective employee's inability to satisfy DOT medical standards does not violate disability discrimination laws.  *See Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 573 . . . (1999)(holding that an employer may, consistent with the ADA, apply DOT's physical qualifications standards to its employees); *Tate v. Farmland Indus.*, 268 F.3d 989, 994 (10th Cir. 2001)(holding that "[w]e have little difficulty concluding that Defendant may rely on a reasonable interpretation of DOT's Medical Advisory Criteria, which undoubtedly are job-related and consistent with Defendant's safety and liability concerns, to establish physical requirements for its [Commercial Motor Vehicle] operators provided Defendant does so consistently and uniformly"); *Campbell v. Federal Express Corp.*, 918 F. Supp. 912 (D. Md. 1996)(holding it is "undisputable that [the defendant employer] may rely on DOT regulations as a defense to an ADA discrimination claim.").

> standards in order to be considered a
> qualified individual with a disability under
> title I of this legislation." S. Rep. No.
> 101-116, pp. 27-28 (1990). The two primary
> House Committees shared this understanding,
> see H.R. Rep. No. 101-485, pt. 2, p. 57
> (1990)(House Education and Labor Committee
> Report); *id.*, pt 3, at 34 (House Judiciary
> Committee Report).

In *Albertson's, Inc. v. Kirkenburg*, the Supreme Court held that because the employer could rely on the DOT regulation in defining the essential job functions of a commercial truck driver, the discharge of a truck driver who did not meet DOT's distant vision acuity standard did not give rise to a violation of the ADA as he was not a "qualified individual with a disability" under the statute.

## Defendant's Motion to Dismiss

## and in the Alternative, Motion for Summary Judgment (#14)

Defendant, a transportation logistics company engaged in interstate commerce with operations throughout North America, asserts that it terminated Williams' employment as one of its tractor-trailer drivers not only after a physician concluded that Williams was not physically qualified to drive a truck under DOT regulations and rescinded his medical certification, but after Williams then failed to take the required steps to become recertified. His failure to do so not only defeats his discrimination claims, but deprives the Court of subject matter jurisdiction until he pursues his administrative remedy.

Defendant recites that when Williams was hired on or about June 4, 1999, he was given a copy of the J.B. Hunt Transport

Driver's Manual, and in 2010, of the updated version in effect at the time of his termination.  Ex. A, Declaration of Todd Davis ("Davis"), now Director of Safety and, at the time of the actions in dispute, Human Resources compliance manager for Defendant, at ¶¶ 4-5 and exhibits A-1 and A-2.  Safety was one of Defendant's top priorities, as evidenced in the Manual.  Ex, A-2 ("The safety of the employee, the public, and the operation is paramount and every attempt shall be made to reduce the likelihood of accidents and injuries,").  Included in the Manual is a set of Operation and Safety Policies and Procedures, which requires *inter alia* "that employees maintain up-to-date D.O.T. physicals (*i.e.*, medical certification)"; "that if their ability to perform their normal job duties has been impaired, drivers be medically re-certified before returning to work by a company-approved doctor (who has knowledge of J.B. Hunt's operations and the employee's job functions"); and "that drivers who have been or are being treated for an illness, injury, or change to medical condition, must obtain a release from his or her [*sic*] treating doctor that states the driver has been released to work and can drive, load, and unload without restrictions."  Ex. A-2, J.B. Hunt 0497 [Williams]. Furthermore the Manual's Professional Driver Job Description states that a driver must "meet all Federal and State requirements for certification and CDL licensing for a commercial vehicle with air brakes, *including a current DOT medical physical meeting the*

*requirements set forth by section 391.41.*"[4]   A-2, J.B. Hunt 0492
[Williams](emphasis added).   When Williams was hired, Defendant
also provided him with a copy of DOT's Federal Motor Carrier
Safety Regulations ("FMCSR").   According to Davis' Declaration
(Ex. A at p.2), "Williams committed himself to becoming familiar
with them" and "signed an acknowledgment that he received" the
Manual and the FMCSR.   Ex. A, Ex. 1, copy of acknowledgment.   When
the Manual was updated in 2010, Defendant distributed copies to
each of its drivers.   Ex. A-1, Ex. 2.

Williams was a driver on Defendant's Goodman Account, on
which at the time of Williams' termination there were 26 drivers,
five of whom were older than Williams, three of whom were over 60,
and a fourth of whom turned 60 within a month of Williams'
termination.   Twelve out of the 26 (46%) were age 50 or above when
Williams was terminated.

Defendant's summary of the facts, supported by
documents, is more detailed than Williams'.   On May 19, 2010
Williams fainted at his home.   At the Cypress Fairbanks Medical
Center on the same day he was diagnosed with syncope and blood
behind his left eye.   Ex. B (sealed in #15).   The next day his
personal physician, Chuong Nguyen, M.D., filled out FMLA paperwork
for Williams that confirmed the diagnosis of syncope, indicated
that Williams needed a diagnostic workup, and stated that Williams

---

[4] Section 391.41(a) mandates that a person cannot drive
a commercial motor vehicle without a medical examiner's
certification that he is physically qualified.

could return to work on June 1, 2010.  Ex. A, ¶ 14; Ex. A-8, under
seal at #15).

Regarding a subsequent visit on May 26, 2010, Dr.
Nguyen's notes stated that Williams' wife indicated that Williams
had had a previous fainting episode the year before, but did not
seek medical help at that time.  *Id.*; *id.* Dr. Nguyen sent
Defendant a completed Attending Physician's Certification of
Health Condition, diagnosing Williams with syncope (fainting).
Ex. 3.  After Williams' workup, Williams was diagnosed with
ventricular tachycardia (a rapid heartbeat) in addition to
syncope.  Ex. A-8, J.B. Hunt 0052 [Williams].

Supported by Davis' Declaration (Ex. A), Defendant
explains that because Williams missed work due to illness or
injury, both federal regulations and Defendant's rules required
that a DOT-certified physician review Williams' physical
qualifications and certify him to drive a tractor-trailer before
he could return to his job of truck driving.  49 C.F.R. § 301.45.[5]

_____

[5]   Section 391.35 ("Persons who must be medically
examined and certified") provides in relevant part,

> Except as provided in § 391.67, the following
> persons must be medically examined and
> certified in accordance with § 391.43 as
> physically qualified to operate a commercial
> motor vehicle:
>
> (a) Any person who has not been medically
> examined and certified as physically
> qualified to operate a commercial motor
> vehicle;
>
> (b)(1) Any driver who has not been medically
> examined and certified as qualified to
> operate a commercial motor vehicle during the

-24-

For this purpose Defendant regularly sends its employees to a
Concentra clinic near their homes.  Defendant maintains it has no
conflict of interest with Concentra nor any of its doctors, and
Williams has not alleged or shown otherwise.  Although Williams
was then recertified by a doctor connected to Concentra Medical
Centers, Dr. C.H. Howard, on July 15, 2010, that certification was
based on incomplete information because at the time Dr. Howard did
not know of the personal physician Dr. Nguyen's diagnosis of
syncope and ventricular tachycardia, and Williams told Dr. Howard
only that he had passed out after a coughing fit.  Ex. A at ¶ 9
and Ex. A-4, under seal at #15.  Although usually Defendant would
receive a Medical Condition Report and a release to return to work
from an employee's personal physician before sending the employee
for a fitness-for-duty examination at Concentra, the procedure had
not been followed in this case, so on July 15, 2010 Williams'
supervisor told Williams to obtain those documents from his
personal physician.  That same day Williams' personal physician
issued a Medical Condition Report (Ex. 4, under seal at #15),
which indicated his diagnoses of syncope and ventricular
tachycardia.  Defendant received that report the next day, along
with a letter stating that Williams may return to work with no
restrictions.  Exs. 5 (report) and 6 (letter)(both under seal at
#15).

preceding 24 months; . . .

(c) Any driver whose ability to perform
his/her normal duties has been impaired by a
physical or mental injury or disease.

On June 19, 2010 an administrative assistant[6] tried to contact Dr. Howard about the report since it differed from his Medical Examination Report (Ex. 4, under seal at #15)), but learned that Dr. Howard was a "floating doctor" and would not be back for about a month.  Therefore she sent the Medical Condition Report to be reviewed by any qualified doctor.  That report was forwarded to Concentra on July 19, 2010 and was reviewed the next day by Dr. Ellison Wittels, who immediately sent Defendant a

_____

[6] In his response (#24) Williams attempts to argue without any evidentiary support that this unnamed, "mystery" administrative assistant, presumably not a medical doctor, independently reviewed Williams' medical records, provided the records to Defendant's "company doctors" at Concentra, and asked Defendant to have another of its doctors at Concentra (Dr. Wittels) provide a different opinion than Dr. Howard (since Dr. Howard had no conflict with Dr. Nguyen and thus 49 C.F.R. § 391.47 did not apply)and rescind Williams' certification.  Then Defendant told Williams it was placing him on medical leave until hecould once again obtain DOT certification, and subsequently terminated his employment because of Williams disability.
    Noting that if Williams had engaged in discovery, he could easily have discovered the name of the assistant.  Defendant points out in its reply (#26) that DOT's guidance regarding FMCSR makes very clear that the responsibility for ensuring meaningful physical examination of potential drivers falls on the motor carrier, not the driver or the physician.  49 C.F.R. § 391.41 states, "The motor carrier has the responsibility to ensure that the medical examiner is informed of the minimum medical requirements and the characteristics of the work to be performed. Ex. A, Decl. of Travis Odom, and attachments 1 and 2.  Once Defendant learned that the certifying doctor did not have medical records from Dr. Ngyuen, with the diagnoses of syncope and ventricular tachycardia, Defendant had a duty to ensure that the doctors at Concentra had the benefit of Williams' complete medical record before determining whether he was fit to drive. Furthermore, although Williams complains that Dr. Wittels never saw, spoke to, or examined Williams, Defendant points out that the regulation (49 C.F.R. § 391.47(b)(2)) does not require a physical and cites a number of cases holding that a review of the medical history and records suffices without a physical examination. *Harris*, 339 F.3d at 637; *Cliburn*,2007 WL 4199605 at *3 n.32; *Campbell*, 918 F. Supp. at 916.

letter stating that he had rescinded Williams' certification to drive commercial trucks until further clarification about his medical condition was received.  Ex. 7.  On July 26, 2010, Dr. Nguyen forwarded to Defendant the notes and test results from Williams' cardiac work-up and a letter stating that he thought Williams could return to work immediately.   Defendant forwarded these documents (Ex. 8, under seal at #15) to Dr. Wittels that same day.  On July 29, 2010 Dr. Wittels saw Williams in his office and informed Williams that his certification was being rescinded and so informed Defendant.  Davis states that to his knowledge Williams never gave Defendant any additional medical documentation, nor did Williams file an appeal application for determination of his medical qualifications with the Office of Bus and Truck Standards and Operations as required by 49 C.F.R. § 391.47.

Williams sent Davis a letter dated September 3, 2010, which Davis received four days later.  Davis wrote back the next day (Ex. 9) and informed Williams that Williams was on a personal leave of absence (six weeks added onto the 12 weeks of FMLA leave that he had exhausted) and would remain so until certified to return to work by a DOT physician or until he exhausted his available leave.  Subsequently, in six different letters (Ex. 10), Amanda Garrison, Defendant's Benefits Service Representative, warned Williams that if he could not return to work by the end of his leave time, his employment would be administratively terminated in accordance with Defendant's policies because (1)

Williams was never medically certified to return to work, (2) because he never took the steps to resolve the conflict of opinion between his personal physician and Dr. Wittels, and (3) because he did not obtain a medical re-certification while he was on leave of absence for his condition.  Ex. 11, Defendant's Leave of Absence Policy, VII, C.  When his leave expired, Williams' employment was accordingly terminated by Defendant.

Defendant further complains that Williams has failed to prosecute or even participate in this suit,  For months he did not respond to Defendant's written discovery requests until Magistrate Judge Stacy granted Defendant's motion to compel (#11), did not serve any written discovery requests, and did not take any depositions.  Defendant, based on the discovery that it obtained, including Williams' deposition, argues there is no genuine issue of material fact for Williams to continue this suit and asks the Court to dismiss the claims for failure to exhaust administrative remedies before the DOT or to grant summary judgment in favor of Defendant.

A plaintiff must pursue DOT's procedure for physical qualifications for being a commercial truck driver because the issue of qualification falls within the regulatory scheme and substantive expertise of DOT.  *Harris v. P.A.M. Transport, Inc.*, 339 F.3d 635, 636 (8th Cir. 2003); *Cliburn v. CUSA KBC, LLC*, No. SA-07-CV-0620 NN, 2007 WL 4199605, at *3 (W.D. Tex. Nov. 23, 2007).

Moreover, Williams' ADA and ADEA claims depend on his exhausting his administrative remedies establishing his qualifications to drive a truck in interstate commerce.[7]  Both statutes require Williams to demonstrate that he is qualified for the position from which he was terminated.  *EEOC v. Chevron Phillips Chemical Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009)(ADA); *Biekowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1506 & n.3 (5th Cir. 1988)(ADEA).  He cannot make a *prima facie* case under either because he cannot show that he was qualified for the position from which he was terminated because he cannot show he was qualified under DOT regulations since he never pursued the necessary steps under 49 C.F.R. § 391.47 to resolve the conflict between the two physicians.  *Harris*, 339 F.3d at 639 (dismissal of plaintiff's claims is appropriate not only because he failed to exhaust administrative remedies, but because he cannot prove he is qualified to perform the job of commercial truck driver).  Nor can he show any other reason why he was terminated other than that stated and supported with evidence by Defendant, i.e., that he

---

[7]  It is not clear whether Williams, personally, transported property by motor vehicle across state lines in his job for Defendant to trigger DOT jurisdiction, but it is not relevant.  In *Morris v. McComb*, 332 U.S. 422, 434-36 (1947), the Supreme Court held that the Interstate Commerce Commission, the predecessor to DOT, had jurisdiction to regulate all of a defendant carrier's drivers even though a couple of its 42 drivers had not been employed in interstate trips during the relevant period.  The Supreme Court reasoned that the safety issues for a carrier if it sent all of its drivers across state lines would be the same as if it sent only some or most of its drivers on interstate drives.  *Id.* at 434.  *See also Allen v. Coil Tubing Services, LLC*, 755 F.3d 279, 285 (5th Cir. 2014).

exhausted his leave before he became qualified to drive a truck under DOT regulations.

Nor can Williams show that Defendant acted with discriminatory animus. The evidence shows the decision to terminate Williams was due to facts outside of Defendant's control. He was placed on leave and not allowed to return to work because Dr. Wittels and Concentra rescinded his certification. He was not allowed to return to work after his leave without certification by a DOT qualifying physician of his ability to qualify as a driver under 49 C.F.R. § 391.41. Ex. A-2, J.B. Hunt 0491 [Williams](calling for automatic termination of employees who fail to maintain minimum driver hiring qualifications). Ex. A-11, pp. 7-8 (reciting that an employee may not return from a leave of absence without a certification that the employee can perform essential job functions, which for a driver expressly includes being certified by a DOT qualifying physician. Williams has no evidence he was terminated for any other reason.

Furthermore, emphasizes Defendant, he cannot now argue that he was qualified to drive a truck at the time of his termination because he admitted during the course of seeking unemployment benefits that he could not perform his normal work due to his medical condition. Ex. D, Texas Workforce Commission Unemployment File, at J.B. Hunt 0542 [Williams]. Although his own opinion of whether he is qualified for work is irrelevant, equitably he should not be allowed to claim he was physically

qualified when he clearly and unambiguously stated otherwise when it suited his purposes.

Because Congress gave DOT the sole discretion to set driver qualifications, in order to show that he was qualified for his job Williams must prove that he met the requirements of the FMCSR. *Harris*, 339 F.3d at 639; *Campbell*, 918 F. Supp. at 920 (failure to satisfy DOT requirements for certification means the plaintiff was not qualified for his position under the ADA "as a matter of law"). Since there was a disagreement between his physician, Dr. Nguyen, and the carrier's physician, Dr. Wittels, Williams could have appealed to DOT to seek an opinion from the Director of Bus and Truck Standards, and within sixty days of the Director's determination, appealed that decision, if necessary, to the Assistant Administrator. *Harris*, 393 F.3d at 638 n.5. Only then would judicial review be available. *Campbell*, 918 F. Supp. at 918. He failed to do so. Ex. C, Williams' Dep. at 64:24-65:15. Instead he asks this Court, in an impermissible end-run around the DOT regulations, to determine whether he is qualified to drive a truck for Defendant.

There is no evidence that Defendant's reason for terminating Williams was pretextual. Moreover, as evidenced by numerous letters, Defendant informed Williams that he could avoid termination when his leave expired if he obtained the required medical certification. Nor does William have any evidence showing that Defendant treated any driver who did not obtain a DOT medical certification any differently than he was.

-31-

As for the age discrimination claim, Williams was 56 at the time of his termination. The only evidence presented by Williams of age discrimination is a single question from his supervisor, Adam Withers ("Withers"), asking when Williams might retire because another employee wanted his position. Ex. C at 104:5-11. Williams answered that he was not ready for retirement. While the comment is age-related, on its face it is not negative. Williams also admitted during his deposition that he did not know if anyone else similarly situated had been asked the same question. Nevertheless, he also testified that three other drivers who worked with him on the Goodman account were older than he was. *Id.* at 108:21-109:4. Defendant also presented evidence that of the 26 drivers it employed at the time of Williams' termination, five of them were older than Williams, three were over the age of 60, and a fourth turned 60 within a month of Williams' termination. Exhibit A at ¶ 6. Twelve out of 26 drivers were over age 50 or older at the time of his termination. *Id.*

### Court's Decision

For the reasons the Court stated under "Substantive Law" in this Opinion and Order, the Court agrees with Defendant that as a matter of law Williams is precluded from proceeding with his ADA claim here because he was not qualified for his job since he failed to exhaust his administrative remedies with the Secretary of Transportation regarding his fitness to drive a commercial truck in interstate commerce under the FMCSR before his leave

expired, and because he did not pursue the appeals process set out in DOT's regulations so there was no final agency action subject to judicial review.  Williams cannot claim that he was unlawfully discharged from a position for which he was not qualified. Accordingly the Court dismisses Williams' ADA claim with prejudice for lack of subject matter jurisdiction under Rule 12(b)(1).

Logically Williams was not qualified for his job for purposes of a *prima facie* case of age discrimination under the ADEA, again because he failed to exhaust administrative remedies under DOT and thus deprived the Court of subject matter jurisdiction over his ADEA claim.  In contrast to those under the ADA, the Court, however, has been unable to find any cases addressing and dismissing for lack of subject matter jurisdiction ADEA claims by drivers of commercial vehicles in interstate transport who were employed by a private entity and who failed to exhaust administrative remedies under DOT.[8]  Nor has Defendant cited any.

Therefore the Court dismisses Williams' ADEA claims for lack of subject matter jurisdiction under the same rationale as it did the ADA claim, but in an abundance of caution, should this case be appealed and the Fifth Circuit disagree, the Court has reviewed the ADEA claim under Rules 12(b)(6) and 56,

---

[8] The Court does note that in *McGarr v. Peters*, 2008 WL 2778831, at *4 (W.D. Okla. July 11, 2008) the plaintiff did exhaust remedies with regard to some of his age discrimination allegations in a DOT complaint, and the Court allowed those to proceed, but required exhaustion of those not included in his DOT complaint.

alternatively.  The Court concludes that Williams fails to state a *prima facie* case of age discrimination under the ADEA because he cannot show that he was qualified for his job since he has failed to receive medical fitness certification from the Secretary of Transportation.  Even if he were qualified, Defendant has more than met its burden to show there is no genuine issue of material fact and that Williams' ADEA claim is meritless, while Williams has failed to provide any evidence of age discrimination to raise a genuine issue of material fact, no less show that it was the "but-for" cause of his termination.  Although at age 56, Williams is a member of the protected class under the statute, there is no evidence of age discrimination in his discharge. R emarks "relat[ing] to the protected class of persons of which the plaintiff is a member," near in time to the plaintiff's allegedly discriminatory termination, "made by an individual with authority" over that decision, and related to that decision may constitute direct evidence of discrimination. *Jackson v. Cal-Western Packing Corp.*, 602 F.3d 374, 380 (5th Cir. 2010).  "In order for an age-based comment to be probative of an employer's discriminatory intent, it must be direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was a determinative factor in deciding to terminate the employee." *Wyvill v. United Companies Life Ins. Co.*, 212 F.3d 296, 304 (5th Cir. 2000).  The Court agrees with Defendant that Withers' question is by no means clearly and unambiguously discriminatory based on age, and as the single remark challenged by Williams, it

-34-

is insufficient to be probative of discriminatory intent.   Nor
does Williams show when the comment was made, nor whether Withers
had any authority, influence, or role in Williams' discharge.   Nor
does Williams show whether he was replaced by someone younger.
Moreover, Defendant's evidence of the ages of Williams' co-workers
on the Goodman account at the time of his termination completely
undermines his allegations of age discrimination.   Last of all,
the evidence clearly shows that there is no way that age
discrimination was the "but-for" reason for his discharge.   Thus
the Court concludes that if it had subject matter jurisdiction,
Defendant would be entitled to summary judgment on Williams' ADEA
claim.

        For these reasons, the Court

        ORDERS that Defendant's motion to dismiss both Williams
ADA and ADEA claims for lack of subject matter jurisdiction under
Rule 12(b)(1) is GRANTED.   A final judgment will issue by separate
document.

        **SIGNED** at Houston, Texas, this  22<u>nd</u> day of  <u>September</u>,
2015.

                        _____
                              MELINDA HARMON
                        UNITED STATES DISTRICT JUDGE