Case 4:13-cv-02510 Document 41 Filed in TXSD on 08/24/16 Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
August 24, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JIMMIE WILLIAMS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:13-CV-02510 |
| | § | |
| J.B. HUNT TRANSPORT, INC., | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Pending before the Court in the above-referenced cause is Defendant J.B. Hunt Transport, Inc.'s ("J.B. Hunt") Bill of Costs ("Bill of Costs"). (Doc. 29.) J.B. Hunt's Bill of Costs was submitted following this Court's Order granting J.B. Hunt's Motion to Dismiss. (Doc. 27.) J.B. Hunt seeks to recover costs totaling $5,098.05. (*See* Doc. 29 at 1). Plaintiff Jimmie Williams ("Williams") filed his Objections and Response ("Objections") (Doc. 31), and J.B. Hunt filed a Reply (Doc. 32). Based on the parties' arguments, the evidence submitted, and the applicable law, the Court overrules Williams's objections, and he is ordered to pay J.B. Hunt costs in the amount of $5,098.05.

### I. Legal Standard

Federal Rule of Civil Procedure 54(d) authorizes courts to award costs to prevailing parties. Under this rule, "[t]here is a strong presumption . . . that the prevailing party will be awarded costs." *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 586 (5th Cir. 2006) (per curiam) (citation omitted). Nevertheless, "the decision whether to award costs ultimately lies within the sound discretion of the district court." *Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1172 (2013) (citation omitted). That is not to say that the court's discretion in this arena is unfettered. Indeed, "[t]he Supreme Court has indicated that federal courts may only award those costs

articulated in section 1920 absent explicit statutory or contractual authorization to the contrary." *Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512, 529 (5th Cir. 2001) (citations omitted). Pursuant to 28 U.S.C. § 1920, costs may be taxed for:

> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

When a party requests an award of costs and that request is uncontested, "the court presumes that statutorily authorized costs were necessarily incurred and will be taxed." *Vital v. Varco*, CV H-12-1357, 2015 WL 7740417, at *1 (S.D. Tex. Nov. 30, 2015) (citing *Embotelladora Agral Regiomontana, S.A. de C.V. v. Sharp Capital, Inc.*, 952 F. Supp. 415, 417 (N.D. Tex. 1997) ("[I]n the absence of a specific objection, deposition costs will be taxed as having been necessarily obtained for use in the case.")). However, when a party does object, the burden shifts to party seeking costs to show that otherwise authorized costs were necessary. *Id.* (citing *Jerry v. Fluor Corp.*, No. 10-1505, 2012 WL 4664423, at *2 (S.D. Tex. Oct. 2, 2012)).

## II. Analysis

Williams objects to nearly every cost included in J.B. Hunt's Bill of Costs. (*See* Doc. 31.) He breaks his objections down into two categories: (1) the videotape of Williams's deposition,

and (2) other costs. (*Id.*) Williams cites to a number of cases to challenge these costs, but also appeals to the Court to exercise its discretion and deny or reduce costs because "Plaintiff has limited resources while Defendant is a very large corporation" and "Plaintiff brought the action in good faith." (*Id.* at ¶¶ 19–20.) The Court will address each of Williams's arguments in turn.

   a. **Videotape of Deposition**

Pursuant to 28 U.S.C. § 1920, J.B. Hunt seeks $2,187.75 for "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." (Doc. 29 at 1.) Of this amount, $790 is sought for the video deposition of Williams and $1,397.75 for the transcript of Williams' deposition. (*See* Docs. 30-1 at 2–3, 5, 7.) Williams objects, arguing that under 28 U.S.C. § 1920, "costs for copies of videos of oral depositions are not costs generally allowed for reimbursement, especially when the cost for the written transcript is already included as a cost." (Doc. 31 at ¶ 7.) In support of this proposition, Williams cites *Mota*, 261 F.3d at 533, *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1049 (5th Cir. 1998), and *Moore v. Univ. of Notre Dame*, 22 F. Supp. 2d 896, 915 (N.D. Ind. 1998). However, as J.B. Hunt points out in its Reply (Doc. 32 at 2), these cases were decided based on language contained in a prior version of the statute that only allowed recovery for fees "for all or any part of the stenographic transcript," *see* Pub. L. 95-539, § 7, 92 Stat. 2044 (1978). In 2008, the statute was amended to allow cost recovery of "printed or electronically recorded transcripts necessarily obtained for use in the case." 28 U.S.C. § 1920(2). In light of this change, "the cost for videotaped depositions is now recoverable under § 1920(2)." *Baisden v. I'm Ready Prods., Inc.*, 793 F. Supp. 2d 970, 976 (S.D. Tex. 2011); *see also S & D Trading Acad., LLC v. AAFIS Inc.*, 336 Fed. App'x 443, 450–51 (5th Cir. 2009) (per curiam) (unpublished) (noting that the 2008 amendments to § 1902(2) allow for award of costs associated with videotaped depositions).

Although he cites cases that are no longer on point, Williams does cite the correct version of the statute. (*See* Doc. 31 at ¶ 8.) In doing so, he emphasizes the disjunctive "or" employed between "printed" and "electronically" to urge this Court to disallow the $1,226 charge[1] "as it was not necessary for use in this case since the information contained was duplicative of the written transcript of the deposition." (*Id.* at ¶¶ 8–9.) It thus appears that the heart of Williams's argument is that the statute allows for recovery of *either* the written transcript *or* the videotaped deposition, but not both. (*See id.*) This argument is not new. *See, e.g.*, *United States ex rel. King v. Solvay S.A.*, CV H-06-2662, 2016 WL 3523873, at *6 (S.D. Tex. June 28, 2016) ("Relators argue that SPI did not need to pay for both the written transcript and video of every witness deposed."); *Baisden*, 793 F. Supp. 2d at 976 ("Baisden also objects to defendants' request for the costs of both the video and stenographic versions of eleven depositions."). What Williams fails to recognize is that, in the context of these either-or arguments, the focus of § 1902(2) is on the phrase "necessarily obtained for use in the case." *See Nilesh Enters., Inc. v. Lawyers Title Ins. Corp.*, SA-08-CV-661-XR, 2010 WL 2671728, at *3 (W.D. Tex. July 1, 2010) ("Videotape deposition costs and deposition transcripts are both recoverable costs. However, the requesting party still bears the burden of showing that it was reasonably obtained for use at trial." (internal citations omitted)).

"Determination of whether such copies are reasonably necessary is made by the trial court." *Baisden*, 793 F. Supp. 2d at 977 (citations omitted). If the district court determines that both the transcript and videotaped deposition are necessary, it may award costs for both. *See, e.g.*, *id.* (collecting cases and concluding that both transcript and video costs were recoverable because plaintiffs did not challenge defendants' arguments that it expected to use both versions

---

[1] It is unclear where Williams gets this figure since the video deposition was only $790. (*See* Doc. 30-1 at 3, 7.)

during trial, the depositions it sought to recover for were only for witnesses whose live attendance at trial were uncertain, and those witnesses' credibility was "sharply disputed"). *Contra United States ex rel. King*, 2016 WL 3523873, at *6 (noting that the defendant could not recoup costs for both transcript and video deposition of every witness deposed because defendant did "not provide[] the court with any details about why it needed video for every witness."). One way a cost claimant may demonstrate that the videotaped deposition is not duplicative of the transcript is by arguing that the videotaped deposition captures both verbal and nonverbal communication that is necessary to question the witness' credibility at trial. *See Farnsworth v. Covidien, Inc.*, 4:08CV01689 ERW, 2010 WL 2160900, at *2 (E.D. Mo. May 28, 2010) ("[I]t cannot be said that a videotape of a deposition is wholly duplicative of a transcript of the same deposition because the transcript only captures verbal communication, while the videotape captures both verbal and nonverbal communication.")

Here, J.B. Hunt argues that because Williams was the only witness, "the truth or falsity of [his] testimony was anticipated to be of key importance, and J.B. Hunt acted reasonably in assuming that a videotaped deposition would be useful, since it could have been used to powerful effect at trial for purposes of impeachment." (Doc. 32 at 3.) The Court concludes this is sufficient to demonstrate that the videotaped deposition had a different purpose than the transcript and was thus "necessarily obtained for use in the case." *See* 28 U.S.C. § 1920(2). Williams' objection to the cost of the videotaped deposition is overruled.

### b. Other Costs

J.B. Hunt also seeks $2,910.30 in "other" costs. (Doc. 29 at 1.) $611.80 of these requested costs is for retrieval of agency records, $1,490.40 is for retrieval of third-party medical records, and $808.10 is for retrieval of Williams's past employment records. (*See* Doc. 30-1 at

7–21.) Williams makes a number of objections to these costs. (*See* Doc. 31.) First, he objects to the agency-record retrieval fees because they are "merely printout summaries and lack sufficient documentation and itemization." (*Id.* at ¶ 11.) Second, Williams argues that because there are two charges for "copies of TWC" both dated May 29, 2014, that one of these charges should be denied. (*Id.* at ¶ 12.) Williams then attacks the charges for obtaining his medical and employment records because they were obtained from third-parties. *Id* at ¶ 13. Finally, Williams argues that J.B. Hunt has "failed to state any justification for why [any of] these 'other costs' should be classified as taxable expenses and or to explain why they were 'necessarily obtained for use in the case.'" (*Id.* at ¶ 11, 13.) J.B. Hunt responds by citing a number of cases to demonstrate that all of these costs are recoverable, and Williams has failed to demonstrate that the documents obtained were merely for J.B. Hunt's "convenience." (Doc. 32 at 3–7.)

"Whether a deposition or copy was necessarily obtained for use in the case is a factual determination to be made by the district court." *Fogleman v. ARAMCO (Arabian Am. Oil Co.)*, 920 F.2d 278, 285–86 (5th Cir. 1991). Records that are used as summary judgment are "necessarily obtained for use in the case" as contemplated by § 1902. *McNeil v. Wyeth*, 2005 U.S. Dist. LEXIS 9677, at *7 (N.D. Tex. May 20, 2005) (citations omitted). Records obtained primarily for discovery or investigative purposes are not. *Hartnett*, 1999 WL 977757, at *3 (citations omitted). Nevertheless, "costs should not be disallowed merely because the record was not ultimately used at trial or in connection with a dispositive motion." *Id.* at *3 (citing 10 C. Wright & A. Miller, Fed. Prac. & Procedure § 2676 at 424 (3d ed. 1998)). Rather, the proper test of the whether a party is entitled to costs is whether it was reasonably foreseeable that the evidence may be used for trial preparation at the time it was obtained. *Fogleman*, 920 F.2d at 285.

### i. Agency records

J.B. Hunt contends that the agency records it requested are recoverable under 28 U.S.C. § 1920(4), which states that "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case" are recoverable. (Doc. 32 at 5–7.) J.B. Hunt argues that the TWC and EEOC records it requested were "necessary and directly relevant to uncover the positions taken by Williams before the TWC or EEOC, and to understand whether Williams had exhausted his administrative remedies." (*Id.* at 6.) Because these records ultimately revealed that Williams had, in fact, failed to exhaust his administrative remedies, they were used as summary-judgment evidence in J.B. Hunt's Motion to Dismiss. (*See* Doc. 14.) Accordingly, the Court concludes that such records were "necessarily obtained for use in the case" and Williams's objections are overruled. J.B. Hunt likewise alleges that the IRS and Social Security Administration records were necessary to its case because they revealed "information about Plaintiff's mitigation of damages and his earning capacity." (Doc. 32 at 6–7.) Because these issues would have likely been raised if the case had gone to trial, the Court concludes these records were also "necessarily obtained for the case." *See* 28 U.S.C. § 1920(4).

### ii. Medical records

In this case, records from four medical providers are at issue. Records from two of these providers, Kelsey-Seybold and Concentra, were ultimately used as summary-judgment evidence. (*See* Doc. 14.) Accordingly, these records were "necessarily obtained for use in the case" and Williams's objection to the costs of these records is overruled. *See McNeil*, 2005 U.S. Dist. LEXIS 9677, at *7. Although the records from Gill Eye & Neuroscience ("Gill Eye") and Hall-Garcia Cardiology Associates ("Hall-Garcia") were not used as summary-judgment evidence, J.B. Hunt states that Gill Eye was one of the medical facilities listed in Williams's initial

disclosures and that all of the listed facilities—including Hall-Garcia—treated Williams for the medical condition at the heart of this dispute. (Doc. 32 at 3–4.) Thus, it was reasonable for J.B. Hunt to assume records from these two facilities may be necessary to its case. Williams's objection to the cost of records from these two facilities is likewise overruled.

### iii. Employment records

Here, J.B. Hunt contends that it anticipated use of Williams's employment records because they may have revealed a basis for a defense. (Doc. 32 at 4.) This is sufficient to convince the Court that these records were relevant to J.B. Hunt's case and may have been introduced at trial had the case progressed that far. Williams's objection is overruled.

### c. Ability to Pay

Appealing to the Court's discretion to deny or reduce an award for costs, Williams argues that he has limited resources, while J.B. Hunt is a large corporation, and "the recovery of the costs would be insignificant for Defendant while being a hardship for Plaintiff." (Doc. 31 at ¶ 19.) He also points to a number of non-binding cases for the proposition that the Court's discretion to reduce or deny an award on account of financial hardship is particularly relevant when the action was brought in good faith. (*Id.* at ¶ 20.)

"The inability to pay is a proper factor to be considered in determining whether to grant or deny an award of court costs." *Hartnett*, 1999 WL 977757, at *1 (citing *McGill v. Faulkner*, 18 F.3d 456, 459 (7th Cir.)); *McNeil*, 2005 U.S. Dist. LEXIS 9677, at *4. Nevertheless, "even indigent litigants are not automatically exempted from the payment of costs." *Hartnett*, 1999 WL 977757, at *1 (citing *McGill*, 18 F.3d at 458; *Weaver v. Toombs*, 948 F.2d 1004, 1008 (6th Cir. 1991)). Moreover, even when a case is brought in good faith, "the fact that the prevailing party is substantially more wealthy than the losing party is not a sufficient ground for denying or limiting

costs to the prevailing party." *Moore v. CITGO Ref. & Chems. Co., L.P.*, 735 F.3d 309, 320 (5th Cir. 2013) (internal citations and quotation marks omitted).

Here, Plaintiff has presented no evidence of his inability to pay other than his self-serving statement that he has "limited resources." This is insufficient to support his claim of indigency. *See Hartnett*, 1999 WL 977757, at *1. Furthermore, even assuming Williams brought his case in good faith, the Fifth Circuit has made clear that the fact that J.B. Hunt is a large, wealthy corporation is irrelevant in determining whether it is entitled to an award of costs. *See Moore*, 735 F.3d at 320. Williams's final objection is overruled.

### III. Conclusion

For the forgoing reasons it is hereby

**ORDERED** that Williams's Objections and Response in Opposition to Defendant's Bill of Costs (Doc. 31) is **OVERRULED**. Accordingly, Williams is

**ORDERED** to pay J.B. Hunt costs in the amount of $5,098.05.

SIGNED at Houston, Texas, this 24th day of August, 2016.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE